UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO
(HONORABLE EDWARD J. LODGE)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CR-06-152-N-EJL |
| | ) | |
| vs. | ) | MEMORANDUM ORDER |
| | ) | |
| RICKY FISHER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court in the above-entitled matter is Defendant Ricky Fisher's Motion to Suppress (Docket No. 26). The Court held an evidentiary hearing on the motion in Moscow, Idaho on February 12, 2006. The Court requested supplemental briefing from the parties. The Court has received the supplemental briefing and is now prepared to rule on the pending motion.

**Issues:**

1. Was Defendant "in custody" and entitled to Miranda warnings when he was interviewed at his place of employment and he confessed to robbing the bank? Was he "interrogated?"

2. Do statements made as to the exact location of clothing and the note used in bank robbery given after Defendant was given a Miranda warning fall under "fruit of the poisonous tree" and have to be suppressed if the Court finds the first confession is subject to suppression?

3. Was the recording of Defendant's outgoing phone call from the jail subject to the law enforcement or consent exceptions of Title III of the Omnibus Crime Control and Safe Streets Act?

**Factual Background:**

A branch of Bank of America in Hayden, Idaho was robbed on June 29, 2006 at approximately 9:00 a.m. Rob Urbaniak, Federal probation officer, received an email from the FBI with still photos of the robbery suspect in the afternoon. Urbaniak thought the photo could be a

person on supervised release, the Defendant Ricky Fisher and notified the FBI.  Urbaniak went with the FBI agents to Defendant's mother's house and Defendant's residence as these locations were on the way to Defendant's place of employment at the casino.  Since Defendant's car was not outside of either of these residences, Urbaniak contacted Fisher at his place of employment and indicated he would be stopping by for an employment check.

Urbaniak and two FBI officers (Special Agent Dunton and Special Agent Edward Jacobson) arrived at the casino restaurant where Fisher worked at approximately 6:00 p.m..  Special Agent Dunton asked the hostess if they could speak with Fisher.  Fisher appeared and after introductions, Agent Dunton asked if there was a place they could talk in the casino.  They went into the Bingo Hall which was less noisy than the casino and was not being used for bingo at that time.

It is undisputed that the FBI agents did not Mirandize Fisher before they started asking him questions regarding his activities that day.  The officers chatted about 15 minutes and showed Fisher the still pictures from the bank video system.  Fisher was calm and cooperative. Fisher told what he did earlier that day and when he retold his story it was inconsistent to his first version.  The Probation Officer thought that based on Fisher's calm demeanor and responses to the FBI questions that he may have been wrong in identifying the pictures as Fisher.  The FBI agents admitted they were also following up on other leads besides Urbaniak's, so while Fisher was a primary suspect he was not the only suspect at the time of the interview at the casino.  Urbaniak did not ask questions during the interview by the FBI agents but he was seated at the table with the FBI agents and Fisher in the Bingo Hall.

Special Agent Dunton told Fisher he did not believe him.  Special Agent Dunton asked Fisher if he would be surprised if his fingerprints were found at the bank and Fisher gave an explanation that he had been at the bank branch at issue a few days earlier.  This answer seemed like a red flag to the FBI agents.  Special Agent Dunton did not have fingerprint results from the bank

robbery when he asked this question.  Special Agent Dunton then asked Fisher to empty his pockets which he voluntarily did.  Special Agent Dunton thought Fisher was trying to cover something with paper from his pocket; it was a wad of money.  Special Agent Dunton asked where the wad of money came from and discussed the concept of "bait bills" with Fisher even though the FBI agents knew bait bills had not be used by the bank that was robbed.  The FBI agents observed the Defendant's body language change.  Special Agent Dunton then asked "You weren't going to hurt the teller, were you?"  Defendant said no and confessed to the robbery.  Special Agent Jacobson went to call AUSA Tracy Whelan regarding whether or not Fisher should be arrested.  Special Agent Dunton worked with Fisher to compile a written statement regarding the bank robbery.  The statement, Exhibit 7, indicates Fisher gave the statement voluntarily and knew it could be used in a court of law.  In the written statement, Fisher admits robbing the bank and the location of items used in the bank robbery hidden in the bushes near the Commerce and Labor Department building. The length of the interview at the casino was approximately 45 minutes.  Fisher is led from the casino to Special Agent Jacobson's car.  Special Agent Jacobson drove toward the location of the hidden items.  On the ride to the Commerce and Labor Department building, Urbaniak sat in the back seat of the car with Fisher. Urbaniak asked why he robbed the bank and before Fisher could answer, Special Agent Jacobson told Urbaniak not to ask any questions.  Fisher answered Urbaniak's question by saying something to the effect of "I don't know."  Before the items were located, the FBI agents gave <u>Miranda</u> warnings to Fisher and had him sign an Advice of Rights form (Exhibit 8) at 8:02 p.m.

**Analysis**

<u>1.  Was Fisher "in custody" at the casino?</u>

Defendant asserts that based on the circumstances, he was detained by the officers and that the encounter was a custodial interrogation.  The Government argues the interview was not a

"custodial interrogation" because the Defendant was free to leave and the Defendant voluntarily spoke with officers.

Not all encounters between individuals and police are seizures governed by the Fourth Amendment.  A seizure does not occur simply because a police officer approaches an individual on the street or other public place and asks if he is willing to answer some questions, or by putting questions to someone who is willing to listen.  <u>Florida v. Bostick</u>, 501 U.S. 429 (1991).  For purposes of the Fourth Amendment, a seizure occurs when an officer, through some form of physical force or show of authority, restrains the liberty of a citizen.  <u>United States v. Summers</u>, 268 F.3d 683 (9th Cir. 2001).  Such restraint occurs if, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  <u>Id.</u>  When an encounter is voluntary, no constitutionally protected right is implicated.  <u>Id.</u>

"An officer's obligation to administer Miranda warnings attaches only where there has been such a restriction on a person's freedom as to render him in custody."  <u>United States v. Norris</u>, 428 F.3d 907, 912 (9th Cir. 2005) (quoting <u>United States v. Crawford</u>, 372 F.3d 1048, 1059 (9th Cir. 2004) (en banc) (citations omitted)).  "A person is in custody only where 'there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'"  <u>Id.</u> (citation and internal quotation marks omitted).  The Court must "examine the totality of the circumstances from the perspective of a reasonable person in the suspect's position."  <u>Id.</u> (citation omitted).

The Ninth Circuit set forth five non-exhaustive factors to evaluate in order to determine if a person was in custody:

> (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surrounding of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual.

<u>United States v. Kim</u>, 292 F.3d 969, 974 (9th Cir. 2002).

Interrogation is defined as "direct questioning or its functional equivalent" and the

questioning should "reflect a measure of compulsion above and beyond that inherent in custody itself." Rhode Island v. Innis, 446 U.S. 291, 300 (1980). The Supreme Court instructed courts to first look to whether the encounter involved "direct questioning or its functional equivalent" that the officers subjectively knew was likely to produce an incriminating response; and second, whether the questioning "reflected a measure of compulsion above and beyond that inherent in custody itself." Id.

In applying the Kim factors, the Court finds Fisher was not "in custody." The language to summon the person was that the officers wanted to talk with Fisher about his activities that day. The Defendant was not directly confronted with evidence but was asked questions regarding "bait bills" and whether he thought his fingerprints would be found at the scene after his two explanations of what he had done that day were inconsistent. The physical surrounding of the interview was not threatening as it was in a large room at Fisher's employer and people were walking by as they talked. Fisher did not have to answer the questions and was free to leave since he was not under arrest. The duration of the detention was around 45 minutes, which was not excessive and the degree of pressure applied was not severe. The Court finds a reasonable person would have felt free to end the interview and return to work.

As to whether the interview questioning was "interrogation," the Court finds it was not. The questioning was direct, but Fisher was not under compulsion to answer the questions and was not in physical custody when asked the questions. Defendant argues that the presence of the probation officer changed the nature of the interview to a custodial interrogation. The Court respectfully disagrees.

It is undisputed that Fisher was on supervised release at the time he was interviewed by the FBI agents at the casino. A defendant does not lose his Fifth Amendment protections if he is on probation or supervised release. See Baxter v. Palmigiano, 425 U.S. 308, 316 (1976). If a defendant

asserts his Fifth Amendment protections against self-incrimination, a defendant may not be required to answer the questions of his probation officer even though the terms of his probation require him to be truthful with the probation officer in all matters. <u>Minnesota v. Murphy</u>, 465 U.S. 420, 427 (1984). However, if the defendant fails to raise the Fifth Amendment privilege and voluntarily answers, the defendant has not been compelled within the meaning of the Fifth Amendment. <u>Id.</u> The exception to this general rule is the exclusion of incriminating statements obtained during custodial interrogations if Miranda warnings have not been given to a suspect. <u>Id</u> at 430. In <u>Murphy</u>, the defendant was found not to be in custody during his meeting with his probation officer. The Supreme Court acknowledged "[a] different question would be presented if he had been interviewed by his probation officer while being held in custody or by the police themselves in a custodial setting." <u>Id.</u> n. 5. The Court stated that Defendant was not in custody when he made incriminating statements to his probation officer even though he would be considered in custody for purposes of federal habeas corpus while he was on supervision. <u>Id.</u> "The Court has held that if an individual is subjected to a practice that 'den[ies him] . . . a 'free choice to admit, to deny, or to refuse to answer' then any statement he makes is considered involuntary and cannot be used in a criminal proceeding." <u>United States v. Saechao</u>, 418 F.3d 1073 (9th Cir. 2005) (citing <u>Garner v. United States</u>, 424 U.S. 648, 657 (1976).

In the present case, the probation officer was with the FBI agents, but he was not asking the questions and there has been no showing that Fisher did not have the free choice to admit, deny or refuse to answer the questions at the time he was being asked. Nor does the Court find Fisher was in a custodial setting where the Fifth Amendment would be self executing.

In determining whether a defendant's statements were voluntary the Court should consider the totality of the circumstances surrounding the making of the statements. <u>See</u> <u>Mincey v. Arizona</u>, 437 U.S. 385, 398 (1978). "A confession is involuntary if coerced either by physical intimidation

or psychological pressure." <u>Crawford</u>, 372 F.3d at 1061 (quoting <u>United States v. Haswood</u>, 350 F.3d 1024, 1027 (9th Cir. 2003)).  In determining whether a defendant's confession was voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.' " <u>Id.</u> (citations omitted).  Courts "must consider the totality of the circumstances involved and their effect upon the will of the defendant." <u>Id.</u> (citations omitted).

Here the Defendant signed a written statement indicating his confession was voluntarily made to Agents Dunton and Jacobson and that he was not threatened nor promises given to induce the statement and that he knew the statement could be used in a court of law.

For these reasons, the Court finds the statements made to the FBI agents at the casino should not be suppressed.

<u>2.  Is statement on location of bank robbery items after being Mirandized subject to suppression?</u>

The Government must prove by a preponderance of the evidence that the accused voluntarily, knowingly, and intelligently waived his Miranda rights. <u>Colorado v. Connelly</u>, 479 U.S. 157 (1986).  To prove a valid waiver the Government must show that (1) the waiver represented an "uncoerced choice," and (2) the defendant understood both the nature of the right being waived and the consequences of waiver.  <u>Moran v. Burbine</u>, 475 U.S. 412 (1986).  In assessing the validity of a waiver, the Court should analyze the totality of the circumstances surrounding the interrogation. A waiver is knowing and intelligent if it is "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Collazo v. Estelle</u>, 940 F.2d 411, 415 (9th Cir. 1991) (quotations and citations omitted); <u>see also</u> <u>United States v. Rodriguez-Preciado</u>, 399 F.3d 1118, 1128 (9th Cir. 2005) (quoting <u>United States v. Doe</u>, 155 F.3d 1070. 1074 (9th Cir. 1998) ("A waiver is voluntary if, under the totality of the circumstances, the confession was the product of a free and deliberate choice rather than coercion or improper inducement.").

Here, it is undisputed Fisher was Mirandized before he gave the statement regarding the exact location of the items used in the robbery.  Since the Court has previously ruled the earlier confession is admissible, the statements after being Mirandized are also admissible.

3.  Is outgoing phone call from jail subject to suppression?

Defendant claims his outgoing phone call wherein he admits robbing the bank should be suppressed under the Fourth Amendment and Title III of the Omnibus Crime Control and Safe Streets Act.  In this case, the Defendant used the phone at the Bonner County Jail.  It is the policy of Bonner County Jail to record all outgoing calls of inmates (unless they are attorney client phone calls).  Once the call is accepted by the third party, the phone system states for the inmate and the third party to hear "this call is subject to monitoring and recording."  It is undisputed that the Inmate Handbook and Rules does not indicate that phone calls are recorded.  (Exhibit A).

Under United States v. Van Poyck, 77 F.3d 285 (9th Cir. 1996), the defendant's request for suppression must be denied.  First, Fisher does not have a constitutionally protected expectation of privacy in outbound calls from a jail.  Therefore, the Fourth Amendment does not apply.  Id. at 290.  Next, under Title III, the law enforcement and consent exceptions apply to this case.  Id. at 291-292.  The outbound prisoner calls were recorded in the normal course of duties by the personnel at the jail.  Moreover, Fisher consented to the recording of his outbound call once he proceeded with his conversation after hearing the recording on the phone system informing him and the party he was speaking with that the call is subject to monitoring and recording.  Accordingly, the statements made on the outgoing phone call from Bonner County Jail do not need to be suppressed.

**Conclusion:**

Based on the record before this Court, the Court finds Fisher was not "in custody" at the time he confessed a the casino so he did not have to be Mirandized; his statement as to the location of items used in the robbery was made after he was Mirandized so it need not be suppressed; and the

outgoing phone call from the jail does not fall under the Fourth Amendment and is clearly within the law enforcement and consent exceptions of Title III.  Therefore, the Defendant's motion to suppress (Docket No. 26) is **DENIED**.  The trial in this matter remains set for March 6, 2007 at 9:30 a.m. in Coeur d'Alene, Idaho.

DATED:  **February 23, 2007**

~~Honorab~~le Edward J. Lodge
U. S. District Judge